IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| MYOBY, LLC, a Delaware limited liability company; and ARS FRESNO, LLC, a California limited liability company, | Case No. 1:12-cv-02027-CL |
| Plaintiffs,<br>v. | REPORT & RECOMMENDATION |
| EQUILON ENTERPRISES LLC dba Shell Oil Products US, a Texas limited liability company,<br>Defendant. | |

CLARKE, Magistrate Judge.

Plaintiffs MYOBY, LLC ("MYOBY") and ARS Fresno, LLC ("ARS") bring this diversity action against defendant Equilon Enterprises LLC, dba Shell ("Shell"), alleging breach of contract, breach of the duties of good faith and fair dealing, violation of the Oregon Motor Fuel Franchises Practice Act, and reformation. Currently before the court is Shell's motion (#20) to dismiss, in part, plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons stated below, the court recommends that Shell's motion be granted in part and denied in part.

Page 1 – REPORT AND RECOMMENDATION

## FACTUAL BACKGROUND

The following facts are taken as true from MYOBY and ARS' First Amended Complaint:

Shell is a refiner and distributer of motor fuel. ARS operates gas stations and convenience stores in California, Oregon, and Washington, and has common ownership with MYOBY. In 2008, ARS was operating under a contract ("Supplier Agreement") with Capital City, a Shell-authorized supplier and distributor of Shell fuel. Pursuant to the Supplier Agreement, ARS agreed to use Shell-branded fuel at nine gas stations operated by ARS along the west coast.

In 2009, Shell sold real property and a gas station and convenience store located at freeway Exit 58 ("Exit 58 Shell Station") in Grants Pass, Oregon to MYOBY. Freeway Exit 58 is heavily trafficked by motorists traveling along the Interstate 5 corridor. At the time of the sale, four other gas stations selling non-Shell-branded fuel were operating within a one-block radius of the Exit 58 Shell Station.

As a condition of the sale, MYOBY, Shell, and ARS agreed that the Exit 58 Shell Station be added to the Supplier Agreement between ARS and Capital City. The sale of the Exit 58 Shell Station is documented in part by an "Offer to Purchase Premises" agreement ("Purchase Offer"). The Purchase Offer expressly incorporated an "Addendum to Offer to Purchase Premises" ("Purchase Addendum"), which contained a brand covenant providing that any motor fuel sold on the property for a fifteen-year period to be sold under the Shell brand. The Purchase Addendum also contained a brand clause stating that MYOBY would, at its own expense, make any necessary improvements to the Exit 58 Shell Station mandated by Shell and that were consistent with Shell's brand image standards. The Purchase Addendum additionally required that the terms of the Supplier Agreement be extended for an additional five years.

After the close of escrow, MYOBY leased the Exit 58 Shell Station to ARS.  ARS

currently operates the Exit 58 Shell Station as a Shell-branded fuel station and convenience store.

Shell recently approved the branding of a new motor fuel station approximately one

block from the Exit 58 Shell Station.  As of mid-December 2012, the new Shell station was

constructed and in operation.  No other Shell-branded stations exist nearby.  On December 12,

2012, MYOBY and ARS filed a First Amended Complaint ("FAC") against Shell, alleging (1)

breach of contract, (2) breach of the duties of good faith and fair dealing, (3) unlawful motor fuel

franchise practices, and (4) reformation of the Purchase Addendum.  On January 7, 2013, Shell

moved to dismiss MYOBY and ARS' second and third claims for relief.

## STANDARD

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

upon which relief can be granted.  The question presented by a motion to dismiss is not whether

the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in

support of the claim.  *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other*

*grounds by* Davis v. Scherer, 468 U.S. 183 (1984).  In answering this question, the court must

assume that the plaintiffs' allegations are true and must draw all reasonable inferences in the

plaintiffs' favor.  *See* Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  A

complaint need not make "detailed factual allegations," however, "a formulaic recitation of the

elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 -

56 (2007).  To survive a motion to dismiss under FRCP 12(b)(6), plaintiffs must allege sufficient

facts to "raise a right to relief above the speculative level."  Id. at 555.  That is, plaintiffs must

show that their claims not merely conceivable, but plausible.  Id. at 570; Ashcroft v. Iqbal, 556

U.S 662, 679 (2009).

## DISCUSSION

I.    **Oregon Motor Fuel Franchise Practice Act**

MYOBY and ARS' second and third claims allege breach of the implied duty of good

faith and fair dealing under ORS § 650.245.[1] Shell argues that the claim must be dismissed

because the FAC does not adequately plead that a franchise relationship existed between Shell

and MYOBY, or between Shell and ARS.

ORS § 650.245 is part of the Oregon Motor Fuel Franchise Act ("OMFFA").  To gain the

protections of OMFFA, a plaintiff must allege that it has a "franchise relationship" with a

defendant.  ORS § 650.200(5)(a)(B) defines "franchise" as:

> [A]ny contract…Between a refiner and a motor fuel retailer…under which a
> refiner or motor fuel distributor authorizes or permits a motor fuel retailer or
> motor fuel distributor to use, in connection with the sale, consignment or
> distribution of motor fuel, a trademark which is owned or controlled by such
> refiner which supplies motor fuel to the motor fuel distributor which authorizes or
> permits such use.

ORS § 650.200(3) defines a "contract" as "any oral or written agreement."  "Motor fuel

retailer" is "any person who purchases motor fuel for sale to the general public for ultimate

consumption, and "refiner" is "any person engaged in the refining of crude oil to produce motor

fuel," including affiliates.  ORS §§ 650.200(13)-(14).

Shell admits that it is a refiner under OMFFA, but argues that it does not have a franchise

relationship with either MYOBY or ARS.  In reference to MYOBY, Shell contends that the FAC

alleges only that MYOBY is the owner and lessor of the property, and does not contain

allegations that would permit the inference that MYOBY is a purchaser of motor fuel.  In

---

[1] MYOBY and ARS' second claim for relief, "Breach of Duties of Good Faith & Fair Dealing," alleges that Shell
violated the implied duties of good faith and fair dealing under both ORS § 650.245 and Oregon common law.
MYOBY and ARS' third claim for relief, "Unlawful Motor Fuel Franchise Practice," alleges that Shell violated
ORS § 650.245.  Because the second and third claims both allege violations of ORS § 650.245, the court addresses
the third claim and the OMFFA allegation in the second claim collectively.

reference to ARS, Shell argues that the FAC fails to allege that Shell entered into a contract with ARS. While Shell acknowledges that ARS meets ORS § 650.200(3)'s definition of a motor fuel retailer, Shell points out that neither the Purchase Offer nor Purchase Addendum mention ARS as a contracting party. Shell contends that ARS may have had a franchise relationship with non-party Capital City, whereby Capital City supplied Shell-branded fuel to ARS, but that ARS did not have a franchise relationship with Shell.

Taking all allegations in the light most favorable to MYOBY and ARS, the court finds that the FAC fails to allege a franchise relationship between MYOBY and Shell, but sufficiently alleges a franchise relationship between ARS and Shell. As to MYOBY, the FAC alleges that MYOBY is the purchaser and owner of the Exit 58 Shell Station, but that ARS is the operator of the station and the purchaser of fuel pursuant to a lease with MYOBY. FAC, ¶¶ 3, 4, 15. Because MYOBY does not purchase fuel, MYOBY does not meet the definition of a motor fuel retailer and thus cannot gain the protections of OMFFA.

In regard to ARS, however, the FAC does state a claim under OMFFA. Because Shell admits that it meets the definition of a refiner and ARS meets the definition of a motor fuel retailer, the remaining condition is that the FAC alleges that Shell and ARS had an oral or written agreement subject to the implied covenant of good faith and fair dealing. Paragraphs 8, 34, and 35 of the FAC satisfy this requirement. Paragraph 8 states that as a condition of the sale of the Exit 58 Shell Station to MYOBY, ARS, Shell, and MYOBY all agreed that ARS would sell Shell fuel at the Exit 58 Shell Station:

> The parties agreed that Shell Oil would sell the Exit 58 Shell Station to MYOBY, and that the Exit 58 Shell Station would be added to an existing supplier relationship between Shell Oil, Capital City, and ARS Fresno (hereinafter 'the Agreement'). The Agreement is documented in part by the [Purchase Offer and Purchase Addendum] executed contemporaneously herewith.

Paragraphs 34 and 35 allege that the agreement is subject to the implied duties of good faith and fair dealing, pursuant to which Shell would not allow the establishment of a competing station with the immediate market area of the Exit 58 Shell Station.

Shell argues that it did not have a contract with ARS because neither the Purchase Agreement nor Addendum specifically mentions ARS. However, a careful reading of the Purchase Addendum demonstrates that ARS was erroneously replaced by MYOBY in several sections: the Purchase Addendum states that one condition of the sale is adding the Exit 58 Shell Station to the Supplier Agreement signed by MYOBY, and lists eight other gas stations that are part of the Supplier Agreement and operated by MYOBY. As the parties agree and is clear from the Purchase Offer and Purchase Addendum, MYOBY was merely the purchaser and lessor of the Exit 58 Shell Station. ARS – not MYOBY – was the sole operator of gas stations and the intended party to the Supplier Agreement. Moreover, Paragraph 8 alleges that the agreement between the parties was documented only *in part* by the Purchase Offer and Purchase Addendum, implying that the agreement that ARS would sell Shell-branded fuel is not documented exclusively by these documents. In deciding a motion to dismiss, the court must draw all reasonable inferences in the plaintiffs' favor. Usher, 828 F.2d at 561. Doing so, the court infers that Shell and ARS entered into an agreement under OMFFA, and recommends that Shell's motion to dismiss plaintiffs' claims for relief under ORS § 650.245 be granted as to MYOBY, but denied as to ARS.

## II.    Common Law

In addition to the violation of OMFFA, MYOBY and ARS' second claim for relief also asserts breach of the duties of good faith and fair dealing under Oregon common law. Shell argues that this claim is substantively identical to MYOBY and ARS' first claim for relief for

Page 6 – REPORT AND RECOMMENDATION

breach of contract. MYOBY and ARS contend that the claims are distinguishable, arguing that the allegations in their first claim for relief sound in contract, while the allegations in the second claim for relief sound in tort and do not rely upon the existence of a contract.

Oregon law imposes a contractual obligation of good faith in the performance and enforcement of every contract. Best v. U.S. Nat'l Bank, 303 Or. 557, 561 (1987). In limited circumstances, Oregon also recognizes a separate cause of action for tortious breach of the duties of good faith and fair dealing. Strader v. Grange Mut. Ins. Co., 179 Or.App. 329, 333 (2002). To state such a claim, a plaintiff must allege "first, that the defendant's conduct violated some standard of care that is not part of the defendant's explicit or implied contractual obligations; and, second, that the independent standard of care stems from a particular special relationship between the parties." Id. at 333. Whether such a claim exists is a functional, not a formal, inquiry. Jones v. Emerald Pac. Homes, 188 Or.App. 471, 478 (2003). That is, "the crucial aspect of the relationship is not its name, but the roles that the parties assume in the particular interaction where the alleged tort and breach of contract occur." Strader, 179 Or.App. at 334. However, "[a] typical franchise relationship...does not impose a duty on the franchisor to act for the benefit of the franchisee." Stations West, LLC v. Pinnacle Bank of Or., Civil No. 06-1419-KI, 2008 WL 1944715, at *5 (D. Or. April 30, 2008) (citing Norwood v. Atlantic Richfield Co., 814 F.Supp. 1459, 1469 (D. Or. 1991)).

In this case, MYOBY and ARS do not state a claim for the tortious breach of the duty of good faith and fair dealing. First, the FAC does not allege that Shell's conduct violated an extra-contractual standard of care. The FAC alleges that commitments by MYOBY to purchase the Exit 58 Shell Station and by ARS to sell Shell-branded fuel arose from a contract documented in part by the Purchase Offer and Purchase Addendum. Indeed, in their second claim for relief,

MYOBY and ARS seek "damages arising from Shell's breach of contract." FAC, ¶ 50. Moreover, the FAC does not contain allegations that MYOBY or ARS had a special relationship with Shell. MYOBY and ARS contend that this case is similar to Eulrich v. Snap-On Tools Corp., 121 Or.App. 25 (1993), *vacated on other grounds*, 512 U.S. 1231 (1994)), where the Oregon Court of Appeals found that a special fiduciary relationship existed between a manufacturer and a dealer. However, the case at hand is clearly distinguishable. In Eulrich, the court found that the manufacturer was conducting sales on behalf of dealer, filling out paperwork for the dealer, and exercising complete control over the size and location of the dealer's territory. Id. at 37. While in Eulrich the manufacturer had taken essentially control over the dealer's business, the FAC in this case does not contain allegations that demonstrate that Shell conducted sales on ARS or MYOBY's behalf or that ARS or MYOBY had an exceptional degree of reliance on Shell. Accordingly, MYOBY and ARS' claim for tortious breach of good faith and fair dealing under Oregon common law should be dismissed.

## RECOMMENDATION

For the reasons stated above, defendants' motion to dismiss, in part, should be GRANTED as to MYOBY's second and third claims for relief under ORS § 650.245, and DENIED as to ARS' second and third claims for relief under ORS § 650.245. Shell's motion to dismiss should be GRANTED as to MYOBY and ARS' claim for tortious breach of the duties of good faith and fair dealing under Oregon common law.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge.  Objections to this

Report and Recommendation, if any, are due fourteen (14) days from today's date.  If objections

are filed, any response to the objections is due fourteen (14) days from the date of the objections.

*See* FED. R. CIV. P. 72, 6.

DATED this ____6____ day of JUNE, 2013

MARK D. CLARKE
United States Magistrate Judge